UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
FEB 23 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-168-GWU

JACKIE MARTIN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Martin

       Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

       Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Martin

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Martin

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jackie Martin, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of complaints of chronic knee pain with status post arthroscopic and laser surgeries, and diabetes mellitus. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Martin retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 411). He: (1) could not climb, squat, stoop, bend from the waist to the floor, crouch, or crawl; (2) would require a sit/stand option; (4) could not worked at

7

unprotected heights, around dangerous machinery, stand on concrete, or do any excessive walking; and (5) would be limited to work that involved simple, non-detailed tasks where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the work force were infrequent and gradually introduced. (Id.). The VE responded that such a person could work in the jobs of production inspector/hand packer and small products assembler/inspector/general production worker, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 412).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Martin alleged disability commencing May 27, 1999 due to problems with his knees and back, and diabetes. (Tr. 100). He had filed prior applications for DIB and SSI alleging the same onset date, but these applications were denied in the decision by an ALJ dated August 26, 2002. (Tr. 34-44). The ALJ in the present case did not reopen the prior applications and, therefore, the relevant inquiry is the plaintiff's condition after August 26, 2002. The current ALJ did, however, find that the plaintiff's condition had become somewhat more limiting since the prior decision, which had restricted the plaintiff to medium level work, with a sit/stand option, and

Martin

no stooping, squatting, bending, crawling, or excessive stair or ladder climbing. (Tr. 43).

Evidence submitted in connection with the prior application includes operative reports from 1999 and 2000 by Dr. Patrice Beliveau, initially for a torn lateral meniscus of the left knee, and subsequently for a recurrence of the tear. (Tr. 189, 212). Mr. Martin continued to complain of give-way weakness of the left knee in 2001, but apparently declined Dr. Beliveau's offer to perform more arthroscopic surgery. (Tr. 255). An x-ray of the left knee at that time showed only mild chondromalacia of the patella, and was otherwise normal. (Tr. 257).

After the beginning of the period under question, the plaintiff was seen by Dr. Serge Dubuc, a colleague of Dr. Beliveau's, in August, 2003, with a complaint of right foot pain, which was diagnosed as tendonitis of the peroneal tendon. (Tr. 283). He was given an ankle brace, and Dr. Dubuc obtained an MRI, which was read as normal. (Tr. 282). However, x-rays had shown the possibility of mild osteopenia, and Mr. Martin was referred to a third physician in the same group, Dr. Jean-Maurice Page. Dr. Page recommended nonsteroidal anti-inflammatory drugs and physical therapy, which resulted in improvement, although the plaintiff stated that he was still wearing an ankle brace as of September 30, 2003. (Tr. 254, 280). In terms of functional restrictions, Dr. Page commented on September 22, 2003, that Mr. Martin was unable to do any "prolonged" standing or walking, and must avoid stooping,

9

squatting, bending, or crawling, but it was too early to tell if these restrictions would be permanent. (Tr. 254).

Dr. Bobby J. Kidd conducted a consultative physical examination of Mr. Martin on June 17, 2003. He noted that the plaintiff was alleging disability due to chronic pain in the left knee, and also been diagnosed as having non insulin-dependent diabetes mellitus for three years. (Tr. 243). On examination, the plaintiff was five feet three inches tall and weighed 210 pounds. (Tr. 244). He walked with an abnormal gait, limping and markedly favoring his left leg, and using a cane in his right hand. (Id.). Otherwise, Dr. Kidd said, his gait was not unsteady, and he did not require the use of an ambulatory aid. (Id.). He appeared stable at station and comfortable and sitting and supine positions; there was no sign of diabetic retinopathy, and his lumbar spine examination was normal. (Tr. 244, 246). The right knee was normal, and the left knee, while it had no redness, warmth, fluid, laxity, or crepitus was visibly larger than the right. (Tr. 246). Left knee extension was diminished by 40 to 50 degrees. (Id.). Mr. Martin was able to walk on his heels and toes, but could not perform tandem gait or squat because of the left knee problem. (Tr. 247). A lumbar spine x-ray was normal. (Tr. 248). Dr. Kidd did not list any functional restrictions.

State agency physicians who reviewed the record concluded that the plaintiff would have the ability to perform light level exertion with certain additional non-

exertional impairments. (Tr. 335-53). One of the physicians rejected an opinion from the plaintiff's treating family physician, Dr. William Pratt, dated June 12, 2002, which indicated that the plaintiff's conditions included walking with a severe limp on the left leg, marked tenderness over the medial aspect of the left knee, and tenderness of the left lateral epicondyle. (Tr. 311). Dr. Pratt stated that he did not feel that Mr. Martin was capable of gainful employment. (Id.). One of the state agency physicians indicated that this was a disability opinion "reserved to the Commissioner." (Tr. 345).

Subsequently, Dr. Pratt submitted a functional capacity assessment form stating that the plaintiff would be limited to light level exertion, standing and walking less than two hours in an eight-hour day, sitting about two hours in an eight-hour day, standing only five minutes without changing positions, never twisting, stooping, crouching, or climbing stairs or ladders, having limitations on reaching, pushing, and pulling, and needing to avoid hazards such as machinery or heights. (Tr. 308-10). In addition, he would need to lie down at unpredictable intervals during the work shift. (Tr. 308). The reasons given for the restrictions were severe left knee pain, "walks with a severe limp, constant pain," and difficulty in balancing.

The ALJ rejected Dr. Pratt's sitting, standing, and walking restrictions, saying that they were not supported by objective evidence in Dr. Pratt's office notes or

11

elsewhere in the record. (Tr. 19). The ALJ also found no evidence that the plaintiff needed to lie down.

The plaintiff makes two arguments on appeal.

First, he maintains that his condition meets or equals the Commissioner's Listing of Impairment Section 14.09, captioned "Inflammatory arthritis." Apart from the obvious point that there is no indication that the plaintiff suffers from inflammatory arthritis, as opposed to possible osteoarthritis, the Listing requires "joint inflammation or deformity of two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively." 20 C.F.R. Part 404, Subpart P, App. 1, Section 14.09A. "Inability to ambulate effectively" is defined in section 1.00B2b as including such examples as "the inability to walk without use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities such a shopping and banking, and the inability to climb a few steps a reasonable pace with the use of a single hand rail." There is no evidence that the plaintiff's walking was this severely limited and, as the ALJ noted, it is not even clear from the medical records that his cane was prescribed by physician.

The plaintiff attempts to connect this Listing with another Listing on obesity, LOI 1.00Q. This enjoins adjudicators to consider any additional and cumulative

12

effects of obesity when assessing an individual's residual functional capacity. No medical evidence has been submitted which would suggest that the plaintiff's obesity would meet or equal LOI 14.09A because he was also overweight.

The ALJ's eventual functional capacity finding adopted nearly all the restrictions of the treating physician, Dr. Pratt, except for the restrictions on sitting no more than two hours a day, and needing to lie down at unpredictable intervals. It was also consistent with the temporary functional restrictions of Dr. Page given in September, 2003. (Tr. 254). The plaintiff asserts that the opinion of Dr. Pratt, as a treating source, should have been given complete deference. However, it has long been the rule that the opinion of even a treating source is not given total deference unless it is supported by objective signs, symptoms, and laboratory findings. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Dr. Pratt's office notes do not contain information which would tend to support his extreme restrictions on sitting. There is only one reference, on September 17, 2001, to back pain, which was diagnosed as a left rhomboid muscle strain (Tr. 323), and apparently the plaintiff made no further complaints of this problem. As for the knee problems, the plaintiff alleged in interrogatories that his knee pain limited him to sitting no longer than two hours total (Tr. 153), but taken literally in combination with his allegations that he could not stand or walk for longer than 10 minutes, it would mean that he would spend the rest of the day lying down. Dr. Pratt indicated in his June, 2002 letter that

13

Mr. Martin's left knee injury "was being treated by orthopedic surgeons," (Tr. 311), implying that he was deferring to their judgment in treating this problem. Dr. Page, it will be remembered, was not even sure if a restriction on "prolonged" standing and walking would be permanent, and mentioned nothing about restrictions on sitting. (Tr. 254). In addition to Dr. Kidd's examination, which showed no abnormalities of the right knee, an MRI of the right knee on September 4, 2003 was normal (Tr. 251) and an x-ray of the left knee in May, 2001, after the two surgical procedures, showed only mild chondromalacia of the patella (Tr. 257). Accordingly, a reasonable fact finder could have concluded that there was not sufficient evidence in Dr. Pratt's office notes or in the rest of the medical evidence to support the sitting restrictions.

The decision will be affirmed.

This the  23  day of February, 2006.

G. WIX UNTHANK,
Senior Judge